**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VINCENT TRIPICCHIO, on behalf of himself and all others similarly situated,<br><br>                         Plaintiff,<br><br>     v.<br><br>PVH CORPORATION,<br><br>                   Defendant. | DOCKET NO.<br><br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1.      This is a class action brought on behalf of a proposed class of New Jersey citizens who purchased purportedly-discounted consumer goods from Defendant's physical Van Heusen Company Stores in New Jersey, and who were the victims of Defendant's unlawful uniform advertising, marketing, and sales practices described in greater detail herein.

2.      Defendant has a uniform policy of assigning and displaying a "reference" price on the price tag of every item offered for sale in its Van Heusen Company Stores in New Jersey. See, e.g., Exhibits A-C, Photographs of items purchased by Plaintiff from Defendant's Van Heusen Company Store in New Jersey with affixed price tags listing reference prices.

3.      This tagged "reference" price is not the actual selling price of the item. Indeed, very few – if any – items in Defendant's Van Heusen Company Stores in New Jersey are ever sold or offered for sale at the reference prices displayed on their price tags.

4.      Rather, the tagged reference prices are consistently higher than the actual "sale" prices of the items, and purport to be either (a) a comparison price for the item (i.e., a price at which another retailer has sold or is selling the item or a similar item) or (b) the item's former or original price (i.e., a price at which Defendant itself previously sold the item).

5.     The actual sale prices of the items in Defendant's Van Heusen Company Stores in New Jersey – i.e., the prices at which Defendant offers items for sale, and actually sells items, on a daily basis – are nearly always much lower than the advertised reference prices, typically by 50% to 70%.

6.     Defendant conveys the sale prices of its items via large signs posted on the items' display racks, which signs advertise either (a) the actual "sale" price of the items on the rack or (b) the purported discount applicable to the items, in terms of "percentage off" the reference price.  See, e.g., Exhibit D, Photographs of various signs in Defendant's Van Heusen Company Store, stating, e.g., **"sale now 19.99"** and **"TAKE 70% OFF."**

7.     As a matter of law and fact, the average consumer seeing such a pricing display with respect to an item in a New Jersey store would understand it to be a representation by Defendant that either Defendant or some other retailer was previously – or is currently – offering to sell the item, or a similar item of like quality, at the stated higher reference price for some length of time in New Jersey, and that Defendant is currently offering to sell that item at a discounted, sale price.

8.     The average consumer would also understand the higher reference price set forth on Defendant's tags to be a representation by Defendant that the true value of the item in question is equal to that higher reference price, and that Defendant is offering to sell the item to consumers at a lower, discounted sale price that is less than what the item is actually worth.

9.     Thus, the average consumer would believe that he or she was "getting a deal" in purchasing the purportedly-discounted item from Defendant's Van Heusen Company Store, based on the representations placed on the item's tag and display placards by Defendant.

10.     The reference prices listed on Defendant's price tags under this uniform policy, however, do not represent actual prices at which the same or comparable items were ever sold or offered for sale for a substantial period of time by anyone; whether in New Jersey or elsewhere.

11.     Rather, the reference prices listed on Defendant's tags are wholly fictitious and inflated prices, fabricated by Defendant as a marketing tool according to a standardized formula, intended specifically to induce the false and misleading impression in the minds of consumers that the consumer goods bearing such tags are being offered for sale at a discounted price that is lower than their usual selling price in the market place, and that the goods are of such quality that they are actually worth that higher price.

12.     In actuality, each item in Defendant's Van Heusen Company Stores in New Jersey that bears a higher reference price on its tag is not being discounted by Defendant, and the lower, purportedly-discounted sale price is – or is very close to – the true, every-day, regular price at which the item is typically sold by Defendant and other retailers in New Jersey.

13.     Defendant's policies described herein are unlawful.  Both federal and New Jersey law specifically prohibit a seller from making any representations regarding purported comparison or former prices unless such prices are in fact real prices at which items were actually sold or offered for sale for a substantial period of time by either the seller or a competitor in the recent past in the same area.  These laws also prohibit "phantom" price reductions and claims of discounts off reference prices that never actually existed.  See 16 C.F.R. § 233.1-2; N.J.A.C. § 13:45A-9.6.

14.     By advertising fake reference prices and phantom "sale" prices and discounts in connection with the sale of consumer goods in New Jersey, Defendant has violated federal regulations and New Jersey consumer protection laws, as alleged herein.

15.     Plaintiff's complaint seeks injunctive, declaratory, monetary and statutory relief for himself and the proposed classes to end these two policies and obtain redress for the classes, bringing:

    a.  A claim under the New Jersey Consumer Fraud Act ("CFA"), in that Defendant's uniform policies as described herein constitute an unconscionable commercial practice and regulatory violation that violates N.J.S.A. § 56:8-2;

    b.  A claim under the New Jersey Truth in Consumer Contract Warranty and Notice Act ("TCCWNA"), in that Defendant has presented, shown, offered, and submitted consumer notices, signs, and warranties to Plaintiff and the class that violated their clearly established rights arising under state law, as prohibited by N.J.S.A. § 56:12-15;

    c.  A claim under New Jersey common law for breach of contract based on Defendant's violation of the implied covenant of good faith and fair dealing; and

    d.  A claim for an order for declaratory relief under the New Jersey Declaratory Judgment Act, N.J.S.A. § 2A:16-51, et seq., and injunctive relief to end Defendant's ongoing unlawful uniform policies.

## PARTIES

16.     Plaintiff Vincent Tripicchio is an individual and citizen of New Jersey.  During the class period, Plaintiff purchased consumer goods on several occasions from Defendant's physical Van Heusen Company Store in Atlantic City, New Jersey, including on April 2, 2019. On each visit, Plaintiff was subjected to the practices alleged herein and suffered an ascertainable loss as a result of Defendant's unlawful conduct.  This includes on or about April 2, 2019, at the Van Heusen Company Store at the Tanger Outlets – Atlantic City, located at 32 N. Michigan Avenue, Atlantic City, NJ 08401, when Plaintiff purchased at a purportedly-discounted, "sale" price several items to which were affixed tags that set forth higher reference prices.  See Exhibits A-C, Photographs of items purchased by Plaintiff, with affixed price tags; Exhibit E, Receipt reflecting Plaintiff's purchase.

4

17.     As was the case with all other proposed class members, the reference prices listed on the tags affixed to the items purchased by Plaintiff were completely fictitious, inflated, and/or invented or adopted by Defendant, in that the items were never actually sold by Defendant or anyone else, either in New Jersey or elsewhere, for prices as high as the listed reference prices. Thus, the true value of each item was not equivalent to the listed reference price for the item.

18.     Defendant PVH Corporation is a Delaware corporation with its headquarters and primary offices located at 200 Madison Avenue, New York, NY 10016, and therefore is a citizen of Delaware and New York.

19.     Defendant owns and operates at least eight (8) physical Van Heusen Company Stores in New Jersey, and did so at all times during the relevant class period.

20.     Defendant created the alleged unlawful pricing scheme and associated policies and procedures described herein at its corporate headquarters located at 200 Madison Avenue, New York, NY 10016, and directed and required that these policies and procedures be followed by all physical Van Heusen Company Stores in New Jersey.  Moreover, Defendant created, fabricated, and/or adopted the fictitious reference and sale prices and purported discounts at its corporate headquarters, and directed and required that these misrepresentations be posted on signs and affixed to the tags of merchandise sold in all Van Heusen Company Stores in New Jersey.

## JURISDICTION AND VENUE

21.     This Court has in personam jurisdiction over the Defendant because, inter alia, Defendant: (a) is headquartered in this state; (b) transacted business in this state; (c) maintained continuous and systematic contacts in this state prior to and during the class period; and (d) purposefully availed itself of the benefits of doing business in this state.  Accordingly, Defendant

maintains minimum contacts with this state which are more than sufficient to subject it to service of process and to comply with due process of law.

22.     This Court has federal jurisdiction over the subject matter of this action by virtue of the fact that this is a proposed class action where the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and Plaintiff and Defendant are citizens of different states.

23.     Venue is proper in the Southern District of New York because Defendant is headquartered in this District, regularly transacted and continues to transact business in this District, and created and implemented the unlawful advertising, marketing, and pricing policies complained of herein in and from this District.

## THE UNIFORM POLICIES GIVING RISE TO THE CLASS CLAIMS

24.     One of the most effective techniques in advertising is for a seller to offer customers a reduction from either the seller's own former price for an item or the price at which the item is typically sold by a competitor in the marketplace.

25.     This technique is widely used because sellers know the truth of the old adage "everyone loves a bargain" and understand that a product's "regular" price – the price at which a product is typically sold in the marketplace – matters to consumers.

26.     Indeed, numerous studies show that a consumer is much more likely to purchase an item if they are told that it is being offered at a price less than the price at which the seller or its competitors have previously sold the product; where they are told that an item is worth more than what they are currently being asked to pay for it.

27.     For example, a well-respected study by Dhruv Grewal & Larry D. Compeau, "Comparative Price Advertising: Informative or Deceptive?" 11 J. of Pub. Pol'y & Mktg. 52, 55

(Spring 1992), concludes that **"[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product."**

28.     Numerous other articles and studies have reached the same conclusion.  See Compeau & Grewal, "Comparative Price Advertising: Believe It Or Not", J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002) (noting that **"decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal"** and concluding that **"[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high"**); Joan Lindsey-Mullikin & Ross D. Petty, "Marketing Tactics Discouraging Price Search: Deception and Competition", 64 J. of Bus. Research 67 (January 2011) (concluding that **"[r]eference price ads strongly influence consumer perceptions of value"**); Praveen K. Kopalle & Joan Lindsey-Mullikin, "The Impact of External Reference Price On Consumer Price Expectations", 79 J. of Retailing 225 (2003), (concluding that **"research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value"** and **"have a significant impact on consumer purchasing decisions"**); Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, "An Investigation Into the Effects of Advertised Reference Prices on the Price Consumers Are Willing to Pay for the Product", 6 J. of App'd Bus. Res. 1 (1990) (concluding that **"consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price"**).

29.     Where the reference prices listed by the seller are genuine – where the buyer really is getting an item for a lower price than the one at which it was typically sold or offered for sale in the recent past – then the "bargain" promised in a seller's advertising may be real.

30.     Unfortunately, the case at bar is not such a case.

31.     The case at bar involves a tactic designed to trick consumers into thinking they are getting a "bargain," based on the use of fictitious, inflated reference prices that do not reflect a real price at which the items in question (or similar items) have been sold or offered for sale for a substantial period of time by either Defendant or its competitors in the marketplace; a fake comparison or former price whose only purpose is to convince consumers that Defendant's current price for the item is so far below the price ordinarily or previously charged by Defendant or in the marketplace for such an item that the consumer cannot pass up the "bargain."

32.     The law recognizes the abuses that can flow from the use of such fictitious reference prices.

33.     For example, 16 C.F.R. § 233.2, entitled **"Retail price/comparisons; comparable value comparisons"**, prohibits the advertisement of fictitious price comparisons by sellers.

34.     16 C.F.R. § 233.2 makes clear that a direct price comparison is deceptive unless the reference price used is a real price at which the item in question is or was actually sold in a sufficient number of sales in the seller's area.  See 16 C.F.R. § 233.2(a):

> **(a) Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case** the advertised higher price must be based upon fact, and not be fictitious or misleading. **Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area – that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.** (emphasis added).

8

35.    Further, 16 C.F.R. § 233.2(c) makes clear that a comparison price relating to comparable merchandise must also be a real price at which such comparable merchandise is actually being sold by representative retail outlets in the area. See 16 C.F.R. § 233.2(c):

> **(c) A closely related form of bargain advertising is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area for other merchandise of like grade and quality – in other words, comparable or competing merchandise – to that being advertised… The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area. For example, retailer Doe advertises Brand X pen as having "Comparable Value $15.00". Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive.** (emphasis added).

36.    Similarly, 16 C.F.R. § 233.1 prohibits the advertising of false, "phantom" price reductions and discounts off inflated, fictitious former prices that never actually existed. See 16 C.F.R. § 233.1., stating:

> **§ 233.1 Former price comparisons.**
>
> **(a)  One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**
>
> **(b)  A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably**

9

**substantial period of time, in the recent, regular course of his business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price** (for example, by use of such language as, "Formerly sold at $____"), **unless substantial sales at that price were actually made.**

\* \* \*

**(d)  Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business,** or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

**(e)  If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one.** If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.  (emphasis added).

37.    New Jersey law also recognizes that the tactic of using a false comparison or former price to lure consumers into believing they are getting a discount is a misleading and deceptive tactic.

38.    The regulations promulgated under the New Jersey Consumer Fraud Act include an entire set of regulations designed to make sure that when a seller uses purported discounts and statements regarding purported comparison or former prices to try to induce a purchase, the statements are clear, true, and accurate, and not in any way misleading or deceptive.

10

39.    Taken together, these regulations prohibit a New Jersey seller from using a fictitious, baseless, made-up, or "estimated" comparison or former price in its advertising and require that a seller's stated comparison or former price be a real price at which the goods in question were actually offered for sale in New Jersey in the recent past.

40.    For example, N.J.A.C. § 13:45A-9.6, entitled **"Pricing; prohibition on fictitious pricing and methods of substantiation"** states:

> **(a) An advertiser shall not use a fictitious former price. Use of a fictitious former price will be deemed to be a violation of the Consumer Fraud Act.**
>
> **(b) A former price or price range or the amount of reduction shall be deemed fictitious if it cannot be substantiated, based upon proof:**
>
> > **1. Of a substantial number of sales of the advertised merchandise, or comparable merchandise of like grade or quality made within the advertiser's trade area in the regular course of business at any time within the most recent 60 days** during which the advertised merchandise was available for sale prior to, or **which were in fact made in the first 60 days during which the advertised merchandise was available for sale following the effective date of the advertisement;**
> >
> > **2. That the advertised merchandise, or comparable merchandise of like grade or quality, was actively and openly offered for sale at that price within the advertiser's trade area in the regular course of business during at least 28 days of the most recent 90 days before or after the effective date of the advertisement; or**
> >
> > **3. That the price does not exceed the supplier's cost plus the usual and customary mark-up used by the advertising merchant in the actual sale of the advertised merchandise or comparable merchandise of like grade or quality in the recent regular course of business.** (emphasis added).

41.    Similarly, for items with a price of less than $100, N.J.A.C. §13:45A-9.3(a)(3) provides that a seller must comply with N.J.A.C. §13:45A-9.4(a)(6), which requires a seller to specifically:

**6. <u>Set forth with specificity when in the remote past a former price of an item of merchandise was effective if it was not actively or openly offered for sale within the advertiser's trade area in the regular course of business during at least 28 of the 90 days before the effective date of the advertisement</u>. In this regard, when advertising a seasonal sale, such as Christmas dishes, pool supplies, outdoor furniture, etc., actual dates, specific holidays or terms such as 'last season,' may be used to describe when the former price was used in the remote past.** (emphasis added).

42.     Thus, these regulations do not permit a seller to invent, fabricate, estimate, or blindly adopt a purported comparison or former price.  Rather, under these regulations, a purported comparison or former price advertised by the seller must be a <u>real price</u> at which the seller or someone in the seller's trade area <u>actually sold or offered</u> the item for sale in the recent past.

43.     Defendant's policy of displaying on its price tags false reference prices, which purport to be comparison or former prices but in fact are not, and offering and selling items at purportedly-discounted, phantom "sale" prices, is a deceptive and misleading practice in the sale of goods.

44.     The facts alleged herein regarding Defendant's advertising, marketing, and sales practices are based on investigation by Plaintiff and counsel, which involved, <u>inter alia</u>, multiple visits to multiple Van Heusen Company Stores in New Jersey, on multiple dates, to observe the extent and frequency of the sales and discounts offered by Defendant on various items in Defendants' Van Heusen Company Stores.

45.     As a matter of uniform policy, Defendant assigns and displays a reference price on the price tag of every item offered for sale in its physical Van Heusen Company Stores in New Jersey, which price purports to be either a comparison or former price for the item.  <u>See</u>,

e.g, Exhibits A-C, Photographs of items purchased by Plaintiff from Defendant's Van Heusen Company Store, with affixed price tags listing reference prices.

46.    Despite this representation, Defendant never sold the vast majority (if any) of the merchandise in its Van Heusen Company Stores in New Jersey at the tagged reference prices, or even offered such merchandise for sale at those prices, based on counsel's investigation.  Nor did any other retailer sell or offer for sale such merchandise (or similar merchandise) at the claimed reference prices.

47.    Rather, Defendant perpetually sold and offered for sale, and continues to sell and offer for sale, nearly every item in its Van Heusen Company Stores in New Jersey at a price that is far lower – typically by 50-70% – than the item's tagged reference price.  See, e.g., Exhibit D, Photographs of various signs in Defendant's Van Heusen Company Store, including a large banner stating **"entire store on SALE."**

48.    Defendant conveys its lower, purportedly-discounted "sale" prices to consumers via prominent signs posted on the items' display racks that either (a) set forth the actual, purportedly-discounted "sale" price or (b) promise a specified percentage discount "off" the higher reference price.  See, e.g., Exhibit D, Photographs of various signs in Defendant's Van Heusen Company Store, stating, e.g., **"sale now 19.99"** and **"TAKE 70% OFF."**

49.    By way of example, an item may have a tagged reference price of $56.00, but is on a display rack with a sign that states **"TAKE 60% OFF."**  See Exhibits A, D.  Under this scenario, the actual selling price of the item is $22.40, after applying the advertised **"60% OFF"** discount.  See Exhibit E, Receipt reflecting Plaintiff's purchase of, inter alia, a Van Heusen men's blue short-sleeve button-up shirt, item number 638950701526, with a tagged price of $56.00 for a **"NEW PRICE"** of **"22.40,"** after applying an advertised  60% OFF discount.

50.     Under this pricing nomenclature, Defendant intended to (and did in fact) convey to its customers that, although the former price of the item in question was the item's tagged price, e.g., $56.00, Defendant is now permitting the customer to **"TAKE 60% OFF"** that advertised former price in the form of a discount.

51.     Defendant selected and utilized this language specifically to create the impression in the minds of consumers that the claimed reference price for an item in question was in fact Defendant's former price for such item.  Indeed, Defendant's use of the word **"TAKE"** constitutes an express representation to consumers that Defendant is giving the consumer an opportunity to **"TAKE"** a substantial discount off the item's former price (i.e., the tagged reference price).

52.     Alternatively, an item may have a tagged reference price of $60.00, but is on a display rack with a sign that states **"sale now 19.99."**  See Exhibits C, D.  Under this scenario, the actual selling price of the item is $19.99, notwithstanding the higher reference price of **"60.00"** set forth on the shirt's price tag.  See Exhibit E, Receipt reflecting Plaintiff's purchase of, inter alia, a Van Heusen men's green short-sleeve button-up shirt, item number 638950349292, with a tagged price of $60.00 for a **"NEW PRICE"** of **"19.99."**

53.     Under this pricing nomenclature, Defendant intended to (and did in fact) convey to its customers that, although the former price of the item in question was the item's tagged price, e.g., $60.00, Defendant has **"now"** placed the item on **"sale,"** and has reduced the selling price to $19.99.

54.     Again, Defendant selected and utilized this language specifically to create the impression in the minds of consumers that the claimed reference price for an item in question was in fact Defendant's former price for such item.  Indeed, Defendant's use of the words **"sale"**

14

and **"now"** constitutes an express representation to consumers that Defendant previously offered for sale or sold the item for the listed reference price.

55.     Confronted with such a pricing display, a reasonable New Jersey consumer would believe that the higher reference price displayed on Defendant's price tags represents a typical price at which the same or a similar item was previously sold by Defendant or in the marketplace, and thus is equivalent to the fair market value of the item in question.

56.     The average consumer would also understand that the lower, actual selling price represents a discounted "sale" price for the item, and that the advertised "percentage-off" discount – or the difference between the higher, tagged reference price and the lower "sale" price displayed on the sign – represents the amount of monetary savings that would be appreciated by the consumer who purchases the item from Defendant rather than from someone else.

57.     Indeed, Defendant specifically states as much on each and every sales receipt is issues to customers who purchase merchandise from Defendant's Van Heusen Company Stores in New Jersey, representing that the customers received **"TOTAL SAVINGS"** in a monetary amount equal to the difference between Defendant's higher, tagged reference prices and lower, actual selling prices for the items they purchased. See, e.g., Exhibit E, Receipt reflecting Plaintiff's purchase, stating **"TOTAL SAVINGS $137.11."**

58.     As a matter of uniform policy, however, the reference prices listed on Defendant's price tags are not real current or former prices, in that the items in question were never actually sold or offered for sale by Defendant or anyone else in the marketplace at the purported reference prices; let alone for a substantial number of sales in New Jersey in the recent past, based on counsel's investigation.

59.    Rather, every reference price listed on Defendant's price tags in Defendant's New Jersey stores was created or fabricated by Defendant, using subjective criteria and a standardized formula designed by Defendant.

60.    It is specifically alleged that, during the class period, Defendant took no action whatsoever to confirm that items offered for sale in its New Jersey Van Heusen Company Stores, or comparable items, had ever been sold by anyone at the reference prices listed on their tags, or had been offered for sale at those prices for any significant length of time.  At no time during the class period did Defendant itself offer items for sale at their listed reference prices in its New Jersey Van Heusen Company Stores for a significant period of time, based on counsel's investigation.

61.    Thus, no items offered for sale in Defendant's Van Heusen Company Stores that have been assigned and display both a higher reference price and a lower, purportedly-discounted sale price or promised percentage-off discount are actually being discounted by Defendant; instead, the lower, actual sale price is (or is very close to) the true, every-day, regular price at which the items are typically sold.

62.    Consequently, consumers who purchase such items at Defendant's Van Heusen Company Stores in New Jersey are not actually buying discounted or **"sale"** items, and are not actually **"saving"** the amount of money or receiving the **"% OFF"** discount promised by Defendant.

63.    The result of Defendant's policy was to induce Plaintiff and other consumers to purchase items from Defendant's Van Heusen Company Stores, based on their belief that they were purchasing valuable merchandise worth a much higher price (i.e., Defendant's claimed reference price) at substantial savings (i.e., Defendant's promised **"% OFF"** discount, or the

difference between Defendant's claimed reference price and the purportedly-discounted **"sale"** price), as compared to prices ordinarily charged for those same products by other retailers or by Defendant in the past. In actuality, they would have paid the same or less for identical or similar products sold by other merchants in New Jersey.

64.    What happened to Plaintiff helps illustrate Defendant's unlawful, deceptive, and misleading policy as described herein.

65.    On or about April 2, 2019, Plaintiff visited the Van Heusen Company Store at the Tanger Outlets – Atlantic City, located at 32 North Michigan Avenue, Atlantic City, NJ 08401.

66.    Upon entering the store, Plaintiff observed a large, brightly-colored banner hanging from the ceiling that stated in large, prominent letters **"entire store on SALE."** See, e.g., Exhibit D, Photograph of similar sign in Defendant's Van Heusen Company Store.

67.    Plaintiff also observed large signs prominently advertising **"sale now"** prices and substantial **"% OFF"** discounts posted on nearly every display rack in Defendant's store. See, e.g., Exhibit D, Photograph of similar signs in Defendant's Van Heusen Company Store.

68.    Based on these representations by Defendant and the reference price displayed on the tag of each item in Defendant's store, Plaintiff understood that every item in the store was on sale at a substantial discount and consequently purchased several purportedly-discounted items.

69.    The first item purchased by Plaintiff was a Van Heusen men's blue short-sleeve button-up shirt, item number 638950701526. Affixed to the shirt was a price tag that set forth a purported reference price of **"56.00."** See Exhibit A, Photographs of Van Heusen men's blue short-sleeve button-up shirt, item number 638950701526, purchased by Plaintiff at Defendant's Van Heusen Company Store, with affixed tag stating **"56.00."**

70.    This shirt was displayed on a rack on which Defendant had posted a large sign that stated **"TAKE 60% OFF."**  See, e.g., Exhibit D, Photographs of similar signs in Defendant's Van Heusen Company Store.

71.    Defendant charged Plaintiff $22.40 for this shirt – **"60% OFF"** the tagged reference price of **"56.00"** – which amount Plaintiff paid.  See Exhibit A; Exhibit E, Receipt of Plaintiff's purchase, reflecting, inter alia, that Plaintiff was charged and paid **"22.40"** for item number **"638950701526."**

72.    As was the case with other proposed class members, the reference price listed on the tag of this shirt purchased by Plaintiff was completely fictitious and inflated; a fake price invented or blindly adopted by Defendant in that neither Defendant nor its competitors ever sold for a significant period of time a substantial number of Van Heusen men's blue short-sleeve button-up shirts, item number 638950701526, (or a similar item) at a price equal to or higher than **"56.00,"** the listed reference price, either in New Jersey or elsewhere.

73.    The fake reference price of $56.00 was listed on Defendant's price tag in order to create the false impression in the minds of consumers that a substantial number of Van Heusen men's blue short-sleeve button-up shirts, item number 638950701526, were sold for a significant period of time by either Defendant or its competitors at a price equal to or higher than **"56.00,"** the listed reference price.

74.    In actuality, Defendant created or blindly adopted the fake reference price of $56.00 for the shirt as a sales gimmick, knowing that the true, objective value of the shirt was less than the listed reference price.  Defendant was fully aware that neither it nor its competitors had sold this shirt for $56.00, but instead sold the shirt for far less than the claimed reference

price. Thus, Defendant's claim that the comparison or former price of the shirt was $56.00 was deceptive and misleading.

75.      Consequently, the savings that Plaintiff thought he was receiving – $33.60, the difference between the listed reference price of $56.00 and the selling price of $22.40, which Defendant expressly represented was **"60% OFF"** – did not represent the actual savings afforded to Plaintiff.

76.      In reality, the price that Plaintiff paid for the shirt was effectively the same price at which Defendant customarily and regularly sold the shirt, resulting in minimal savings, if any, realized by Plaintiff, and far less than promised by Defendant.

77.      The second item purchased by Plaintiff was an Izod men's red short-sleeve button-up shirt, item number 638950130463. Affixed to the shirt was a price tag that set forth a purported reference price of **"55.00."** See Exhibit B, Photographs of Izod men's red short-sleeve button-up shirt, item number 638950130463, purchased by Plaintiff at Defendant's Van Heusen Company Store, with affixed tag stating **"55.00."**

78.      This shirt was displayed on a rack on which Defendant had posted a large sign that stated **"TAKE 50% OFF."** See, e.g., Exhibit D, Photographs of similar signs in Defendant's Van Heusen Company Store.

79.      Defendant charged Plaintiff $27.50 for this shirt – **"50% OFF"** the tagged reference price of **"55.00"** – which amount Plaintiff paid. See Exhibit B; Exhibit E, Receipt of Plaintiff's purchase, reflecting, inter alia, that Plaintiff was charged and paid **"27.50"** for item number **"638950130463."**

80.      As was the case with other proposed class members, the reference price listed on the tag of this shirt purchased by Plaintiff was completely fictitious and inflated; a fake price

invented or blindly adopted by Defendant in that neither Defendant nor its competitors ever sold

for a significant period of time a substantial number of Izod men's red short-sleeve button-up

shirts, item number 638950130463, (or a similar item) at a price equal to or higher than **"55.00,"**

the listed reference price, either in New Jersey or elsewhere.

81.     The fake reference price of $55.00 was listed on Defendant's price tag in order to

create the false impression in the minds of consumers that a substantial number of Izod men's

red short-sleeve button-up shirts, item number 638950130463, were sold for a significant period

of time by either Defendant or its competitors at a price equal to or higher than **"55.00,"** the

listed reference price.

82.     In actuality, Defendant created or blindly adopted the fake reference price of

$55.00 for the shirt as a sales gimmick, knowing that the true, objective value of the shirt was

less than the listed reference price.  Defendant was fully aware that neither it nor its competitors

had sold this shirt for $55.00, but instead sold the shirt for far less than the claimed reference

price.  Thus, Defendant's claim that the comparison or former price of the shirt was $55.00 was

deceptive and misleading.

83.     Consequently, the savings that Plaintiff thought he was receiving – $27.50, the

difference between the listed reference price of $55.00 and the selling price of $27.50, which

Defendant expressly represented was **"50% OFF"** – did not represent the actual savings

afforded to Plaintiff.

84.     In reality, the price that Plaintiff paid for the shirt was effectively the same price

that Defendant customarily and regularly sold the shirt, resulting in minimal savings, if any,

realized by Plaintiff, and far less than promised by Defendant.

85.     The third item purchased by Plaintiff was a Van Heusen men's green short-sleeve button-up shirt, item number 638950349292.  Affixed to the shirt was a price tag that set forth a purported reference price of **"60.00."**  See Exhibit C, Photographs of Van Heusen men's green short-sleeve button-up shirt, item number 638950349292, purchased by Plaintiff at Defendant's Van Heusen Company Store, with affixed tag stating **"60.00."**

86.     This shirt was displayed on a rack on which Defendant had posted a large sign that stated **"sale now 19.99."**  See, e.g., Exhibit D, Photographs of similar signs in Defendant's Van Heusen Company Store.

87.     Defendant charged Plaintiff $19.99 for this shirt – the advertised "sale" price – which amount Plaintiff paid.  See Exhibit E, Receipt of Plaintiff's purchase, reflecting, inter alia, that Plaintiff was charged and paid **"19.00"** for item number **"638950349292."**

88.     As was the case with other proposed class members, the reference price listed on the tag of this shirt purchased by Plaintiff was completely fictitious and inflated; a fake price invented or blindly adopted by Defendant in that neither Defendant nor its competitors ever sold for a significant period of time a substantial number of Van Heusen men's green short-sleeve button-up shirts, item number 638950349292, (or a similar item) at a price equal to or higher than **"60.00,"** the listed reference price, either in New Jersey or elsewhere.

89.     The fake reference price of $60.00 was listed on Defendant's price tag in order to create the false impression in the minds of consumers that a substantial number of Van Heusen men's green short-sleeve button-up shirts, item number 638950349292, were sold for a significant period of time by either Defendant or its competitors at a price equal to or higher than **"60.00,"** the listed reference price.

90.     In actuality, Defendant created or blindly adopted the fake reference price of

$60.00 for the shirt as a sales gimmick, knowing that the true, objective value of the shirt was

less than the listed reference price. Defendant was fully aware that neither it nor its competitors

had sold this shirt for $60.00, but instead sold the shirt for far less than the claimed reference

price. Thus, Defendant's claim that the comparison or former price of the shirt was $60.00 was

deceptive and misleading.

91.     Consequently, the savings that Plaintiff thought he was receiving – $40.01, the

difference between the listed reference price of $60.00 and the purported **"sale now"** price of

$19.99 – did not represent the actual savings afforded to Plaintiff.

92.     In reality, the price that Plaintiff paid for the shirt was effectively the same price

that Defendant customarily and regularly sold the shirt, resulting in minimal savings, if any,

realized by Plaintiff, and far less than promised by Defendant.

93.     Additionally, as with every other proposed class member, Defendant represented

on Plaintiff's receipt that he had received a **"TOTAL SAVINGS"** of **"$137.11"** – the monetary

difference between the higher, tagged reference prices that Defendant had assigned to the items

Plaintiff purchased and the items' lower, purportedly-discounted "sale" prices which Plaintiff

actually paid. See Exhibit E, Receipt reflecting Plaintiff's purchase, stating **"TOTAL**

**SAVINGS $137.11."**

94.     This statement on Plaintiff's receipt was yet another misrepresentation by

Defendant. As noted above, the items purchased by Plaintiff were never sold or offered for sale

at their tagged reference prices, nor did the advertised reference prices reflect the true value of

those items. Rather, the items were regularly sold and offered for sale at or near the purportedly-

discounted, "sale" prices that Plaintiff paid, based on counsel's investigation. Consequently,

Plaintiff did not realize a **"TOTAL SAVINGS"** of **"$137.11"** as claimed by Defendant, but instead effectively paid Defendant's regular, everyday price for the items. See id.

95.     What happened to Plaintiff was not an accident nor an isolated incident.

96.     Rather, it was part of a uniform policy in which Defendant engaged in a systematic scheme of false and misleading advertising, marketing, and sales practices with the purpose of persuading customers to purchase supposedly-discounted items from Defendant's Van Heusen Company Stores in New Jersey through the use of fictitious and inflated statements as to the items' reference prices and promised savings and discounts.

97.     These unlawful practices go well beyond the three items identified herein that were purchased by Plaintiff. The same policies and standardized formulae are applied by Defendant to all of the items offered for sale in its eight New Jersey Van Heusen Company Stores which bear a high reference price on their tags but are actually sold at a lower price.

98.     These deceptive advertising, marketing, and sales practices were kept secret, and were affirmatively and fraudulent concealed from customers by Defendant throughout the class period. As a result, Plaintiff and the class members were unaware of Defendant's unlawful conduct and did not know that Defendant's reference prices and promised discounts and savings were fictitious.

99.     Defendant did not tell or otherwise inform Plaintiff or the class members that it was engaged in the deceptive advertising, marketing, and sales practices alleged herein. By their very nature, Defendant's unlawful practices were self-concealing.

100.     As a result of this unlawful, deceptive conduct by Defendant, Plaintiff and the class members have suffered damages as set forth herein.

## CLASS ACTION ALLEGATIONS

101.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23, seeking

damages, statutory penalties, and injunctive relief under New Jersey state law on behalf of

himself and all members of the following proposed class:

> **All New Jersey citizens who purchased any purportedly discounted
> item from a Van Heusen Company Store located in New Jersey for
> which a higher reference price was displayed between June 18, 2013
> and the present.**

102.    Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23,

seeking damages, statutory penalties, and injunctive relief under New Jersey state law on behalf

of himself and all members of the following proposed subclass:

> **All New Jersey citizens who purchased any of the following items at a
> Van Heusen Company Store located in New Jersey between June 18,
> 2013 and the present:  (a) Van Heusen men's short-sleeve button-up
> shirt, item number 638950701526; (b) Izod men's short-sleeve button-
> up shirt, item number 638950130463; or (c) Van Heusen men's short-
> sleeve button-up shirt, item number 638950349292.**

103.    The classes for whose benefit this action is brought are each so numerous that

joinder of all members is impracticable.

104.    The exact number and identities of the persons who fit within each proposed class

are contained in Defendant's records and can be easily ascertained from those records.

105.    The proposed classes and subclasses are each composed of at least 1,000 persons.

106.    Common questions of law and fact exist as to each class member.

107.    All claims in this action arise exclusively from uniform policies and procedures of

Defendant as outlined herein.

108.    No violations alleged in this Complaint are a result of any individualized oral

communications or individualized interaction of any kind between class members and Defendant

or anyone else.

109.     There are common questions of law and fact affecting the rights of the class members, including, inter alia, the following:

a.   whether the uniform advertising, marketing, and sales practices alleged herein exist;

b.   whether Defendant employs a uniform policy of listing fictitious reference prices on the tags of its merchandise that do not represent actual prices at which the merchandise has been or is typically sold or offered for sale;

c.   whether Defendant uses a standardized formula or policy to create or adopt such fictitious reference prices;

d.   whether Defendant's policy of listing fictitious reference prices on the tags of its merchandise and purported discounts and "sale" prices on in-store signs are deceptive, misleading and/or unlawful practices relating to the sale of goods in violation of N.J.S.A. § 56:8-2 of the New Jersey Consumer Fraud Act;

e.   whether the tags on Defendant's merchandise and signs in Defendant's stores constitute consumer notices, signs or warranties within the meaning of N.J.S.A. § 56:12-15 of the New Jersey Truth in Consumer Contract, Warranty and Notice Act;

f.   whether Defendant's policy of listing fictitious reference prices on the tags of its merchandise and purported discounts and "sale" prices on in-store signs violate N.J.S.A. § 56:12-15 of the New Jersey Truth in Consumer Contract, Warranty and Notice Act;

g.   whether each class member is entitled to a $100 per person statutory penalty under N.J.S.A. § 56:12-17 of the New Jersey Truth in Consumer Contract, Warranty and Notice Act; and

h.   whether Plaintiff and the classes are entitled to an order for injunctive relief, barring the continuing illegal policies described herein.

110.     Plaintiff is a member of each class he seeks to represent.

111.     The claims of Plaintiff are not only typical of all class members, they are identical.

112.     All claims of Plaintiff and the classes arise from the same course of conduct, policy and procedures as outlined herein.

113.    All claims of Plaintiff and the classes are based on the exact same legal theories.

114.    Plaintiff seeks the same relief for himself as for every other class and sub-class member.

115.    Plaintiff has no interest antagonistic to or in conflict with the classes.

116.    Plaintiff will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent himself and the classes.

117.    Defendant has acted and/or refused to act on grounds generally applicable to the classes, thereby making appropriate injunctive and declaratory relief for each class as a whole.

118.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of each class, which would confront Defendant with incompatible standards of conduct.

119.    Adjudications with respect to individual members of the classes would as a practical matter be dispositive of the interests of other members not parties to the adjudications and would substantially impair or impede their ability to protect their interests.

120.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member were less than $500 and thus are not great enough to make separate individual lawsuits against Defendant economically viable.

121.    Common questions will predominate, and there will be no unusual manageability issues.

122.    Without the proposed class action, Defendant will likely retain the benefit of its wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiff and class members.

## COUNT I

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J.S.A. § 56:8-1, et seq.

123.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

124.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. (the "CFA"), was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. See Marascio v. Campanella, 689 A.2d 852, 857 (N.J. Ct. App. 1997).

125.    The CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy, Inc., 860 A.2d 435, 441 (N.J. 2004) ("The [CFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").

126.    Indeed, "[t]he available legislative history demonstrates that the [CFA] was intended to be one of the strongest consumer protection laws in the nation." New Mea Const. Corp. v. Harper, 497 A.2d 534, 543 (N.J. Ct. App. 1985).

127.    For this reason, the "history of the [CFA] is one of constant expansion of consumer protection." Kavky v. Herbalife Int'l of Am., 820 A.2d 677, 681-82 (N.J. Ct. App. 2003).

128.    The CFA was intended to protect consumers "by eliminating sharp practices and dealings in the marketing of merchandise and real estate." Lemelledo v. Beneficial Mgmt. Corp., 696 A.2d 546, 550 (N.J. 1997).

129.    Specifically, N.J.S.A. 56:8-2 prohibits **"unlawful practices"** which are defined

as:

> **The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby.**

130.    The catch-all term **"unconscionable commercial practice"** was added to the

CFA by amendment in 1971 to ensure that the CFA covered, inter alia, **"incomplete**

**disclosures."** Skeer v. EMK Motors, Inc., 455 A.2d 508, 512 (N.J. Ct. App. 1982).

131.    In describing what constitutes an **"unconscionable commercial practice,"** the

New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a

broad business ethic.  See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

132.    In order to state a cause of action under the CFA, a plaintiff does not need to

show reliance by the consumer.  See Varacallo v. Massachusetts Mut. Life Ins. Co., 752 A.2d

807 (N.J. App. Div. 2000); Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997) (holding

that reliance is not required in suits under the NJCFA because liability results from

**"misrepresentations whether 'any person has in fact been misled, deceived or damaged**

**thereby"**).

133.    As stated by the New Jersey Supreme Court in Lee v. Carter-Reed Co., L.L.C.,

4 A.3d 561, 580 (N.J. 2010): **"It bears repeating that the [NJCFA] does not require proof of**

**reliance, but only a causal connection between the unlawful practice and ascertainable**

**loss."**

134.    It is also not required that an affirmative statement be literally false in order to be

considered deceptive and misleading under the CFA. Even a statement which is literally true can

be misleading and deceptive in violation of the CFA. See Smajlaj v. Campbell Soup Co., 782 F.

Supp. 2d 84, 98 (D.N.J. 2011) (upholding a NJCFA claim where the defendant argued its written

statement was literally true, holding **"the fact that the labels were literally true does not mean

they cannot be misleading to the average consumer."**)

135.   A CFA violation also does not require that the merchant be aware of the falsity

of the statement or that the merchant act with an intent to deceive.  See Gennari v. Weichert Co.

Realtors, 691 A.2d 350, 365 (N.J. 1997):

> **One who makes an affirmative misrepresentation is liable even in the
> absence of knowledge of the falsity of the misrepresentation, negligence,
> or the intent to deceive…An intent to deceive is not a prerequisite to the
> imposition of liability.**

136.   Nor is it a defense to a CFA claim that the merchant acted in good faith. See Cox

v. Sears Roebuck & Co., 647 A.2d 454, 461 (N.J. 1994) **("the Act [CFA] is designed to protect

the public even when a merchant acts in good faith."**)

137.   In the case at bar, Defendant's policy of placing an inflated, fictitious reference

price on the tags of items offered for sale in its Van Heusen Company Stores in New Jersey is a

deceptive, misleading, and/or unconscionable commercial practice in the sale of goods in

violation of N.J.S.A. § 56:8-2 for the reasons set forth herein.

138.   This policy involves, inter alia, both misleading affirmative statements, the

knowing omission of material facts, and violations of regulatory standards.

139.   First, the practice of placing on price tags a fictitious reference price – a price that

does not reflect an actual price at which Defendant or anyone in New Jersey has actually sold a

substantial number of the same or similar items in the recent past, or offered such items for sale

for a significant period of time – is an affirmative misleading and deceptive statement in the sale

of goods in violation of N.J.S.A. § 56:8-2.  Defendant's practice of advertising phantom **"sale

now" prices and "% OFF" discounts that do not actually result in the claimed savings by the consumer is also an affirmative misleading and deceptive statement in violation of N.J.S.A. § 56:8-2.

140.    Second, Defendant knows that any reasonable New Jersey consumer who sees the fake reference price on Defendant's tags will believe that the reference price is an actual price at which either Defendant or some other retailer in New Jersey actually offered the item – or a similar item of like quality – for sale in the marketplace in the recent past, and that Defendant's purported "sale" price will result in actual savings for the consumer.  Despite this, Defendant does not place any statement or warning on or near the tag itself, or on or near the item itself, explaining that the reference price is simply a marketing tool created by Defendant that does not represent an actual price at which the same or similar item has been sold or offered for sale in the marketplace for any substantial length of time.  Nor does Defendant inform customers that its claimed "sale" prices and promised "% OFF" discounts do not actually result in the promised monetary savings by the consumer.  Thus, Defendant's policy also involves knowing omissions of material fact in the sale of goods in violation of N.J.S.A. § 56:8-2.

141.    Finally, Defendant's policy as described herein is an unconscionable commercial practice because it violates regulatory authority such as 16 C.F.R. § 233.1-2 and N.J.A.C. § 13:45A-9.6, as set forth herein.

142.    Plaintiff and the class members reasonably and justifiably expected Defendant to comply with applicable law, but Defendant failed to do so.

143.    As a direct and proximate result of these unlawful actions by Defendant, Plaintiff and the classes have been injured and have suffered an ascertainable loss of money.

144.    As with other terms of the CFA, the term "ascertainable loss" is to be construed liberally in favor of the consumer in order to carry out the CFA's broad remedial purposes. See In Union Ink Co., Inc. v. AT&T Corp., 352 N.J. Super. 617, 646 (App. Div. 2002) (holding that the ascertainable loss **"requirement has been broadly defined as embracing more than a monetary loss"**).

145.    Thus, the CFA does not require a plaintiff to have suffered any out-of-pocket loss. See Union Ink, 352 N.J. Super. at 646:

> **[A] victim of consumer fraud must prove an 'ascertainable loss,' N.J.S.A. 56:8-19, but that requirement has been broadly defined as embracing more than a monetary loss.** (emphasis added).

146.    Indeed, a consumer has experienced an "ascertainable loss" within the meaning of the CFA whenever the consumer fails to receive the bargain which was promised by the seller. See International Union v. Merck & Co., 384 N.J. Super. 275, 291 (App. Div. 2006):

> **Ascertainable loss "has been broadly defined as more than a monetary loss" and encompasses situations where "a consumer receives less than what was promised."** (emphasis added).

147.    Speaking specifically as to the benefit of the bargain expected by a consumer who purchases merchandise at a discount, the New Jersey Supreme Court in Furst v. Einstein Moomjy, 182 N.J. 1, 13-14 (2004) held that **"The 'expectation interest' of the consumer who purchases merchandise at a discount is the benefit of the bargain."**

148.    Plaintiff suffered an ascertainable loss within the meaning of the CFA when he failed to receive the full benefit of the bargain promised by Defendant.

149.    The purported discounts and **"sale"** prices offered by Defendant were illusory because the existence and extent of the promised discounts and sales were premised on

Defendant's misleading and false reference prices, and its representations that the actual value of the items was equal to those prices.

150.    Under New Jersey law, the value of an item is presumed to be the price listed on its price tag as the regular, typical price at which it is sold in the marketplace.

151.    By stating that the reference prices of the items purchased by Plaintiff were higher than the prices at which the items were typically sold or offered for sale, Defendant promised a bargain to Plaintiff in which he would receive items worth the reference prices claimed on Defendant's tags and would appreciate monetary savings equal to the promised **"% OFF"** discount and/or the difference between the reference and purchase prices.  In actuality, however, the true value of the items purchased by Plaintiff was less than the false and inflated reference prices listed on their tags, and Plaintiff did not save the amount of money claimed by Defendant.

152.    For example, Defendant affixed a price tag to the Van Heusen men's blue short-sleeve button-up shirt purchased by Plaintiff, item number 638950701526, representing that the former price (and value) of the shirt was **"56.00,"** and posted a sign promising that Plaintiff could **"TAKE 60% OFF"** via discount, thus representing that Plaintiff was getting a shirt worth **"56.00"** for just $22.40, at a **"60% OFF"** discount.  In reality, those statements of value and savings were grossly inflated by Defendant.  Plaintiff did not receive the benefit of Defendant's promise that he would be receiving a shirt worth $56.00 and monetary savings of $33.60 (or **"60% OFF"** the reference price).  The shirt was not typically sold in New Jersey by anyone for a price as high as $56.00, and the shirt was worth less than $56.00; thus, Plaintiff did not actually realize a monetary savings of $33.60 or the promised **"60% OFF"** discount when he purchased the shirt for $22.40.  See Exhibits A, D, and E.

153.    Similarly, Defendant affixed a price tag to the Van Heusen men's green short-sleeve button-up shirt purchased by Plaintiff, item number 638950349292, representing that the former price (and value) of the shirt was **"60.00,"** and posted a sign promising that the shirt was on **"sale now 19.99,"** thus representing that Plaintiff was getting a shirt worth **"60.00"** for just **"19.99,"** at a savings of $40.01.  In reality, those statements of value and savings were grossly inflated by Defendant.  Plaintiff did not receive the benefit of Defendant's promise that he would be receiving a shirt worth $60.00 and monetary savings of $40.01 (the difference between the reference and **"sale"** prices).  The shirt was not typically sold in New Jersey by anyone for a price as high as $60.00, and the shirt was worth less than $60.00; thus, Plaintiff did not actually realize a monetary savings of $40.01 when he purchased the shirt for $19.99.  See Exhibits C, D, and E.

154.    Moreover, Plaintiff suffered an out of pocket loss of money in that he was induced to pay Defendant money based on the misleading and deceptive statements of Defendant.  But for those misleading and deceptive statements, Plaintiff would not have paid any money to Defendant.

155.    Pursuant to N.J.S.A. § 56:8-19, Plaintiff seeks, inter alia, actual damages, treble damages, and injunctive relief for himself and the classes.

## COUNT II

### VIOLATION OF THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT, N.J.S.A. § 56:12-14, et seq.

156.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

157.    Plaintiff and the class members are "consumers" within the meaning of N.J.S.A. § 56:12-15.

158.    Defendant is a "seller" within the meaning of N.J.S.A. § 56:12-15.

159.    The price tags on the merchandise sold by Defendant bearing the false reference prices, as well as the signs posted in Defendant's stores claiming discounted **"sale"** prices and specific **"% OFF"** savings, are consumer **"notices," "signs"** and/or **"warranties"** within the meaning of N.J.S.A. § 56:12-15.

160.    By the acts alleged herein, Defendant has violated N.J.S.A. § 56:12-15 because, in the course of Defendant's business, Defendant has offered, displayed and presented written consumer notices, signs and warranties to Plaintiff and the class which contained provisions that violated their clearly established legal rights under state law and federal law, within the meaning of N.J.S.A. § 56:12-15.

161.    Specifically, the clearly established rights of Plaintiff and the classes under state law include the right not to be subjected to unconscionable commercial practices and false written affirmative statements of fact in the sale of goods, as described herein, which acts are prohibited by the CFA, N.J.S.A. § 56:8-2.

162.    Further, the clearly established rights of Plaintiff and the classes under federal law include the right not to be subjected to false advertising in violation of 16 C.F.R. § 233.2.

163.    Plaintiff and each class member are aggrieved consumers for the reasons set forth herein, and specifically because, inter alia, each purchased items from Defendant that bore the complained-of tags displaying false reference prices and were displayed under the complained-of signs that set forth false sale prices and percentage-off discounts, and each suffered an ascertainable loss under the CFA as described above.

164.   Pursuant to N.J.S.A. § 56:12-17, Plaintiff seeks a statutory penalty of $100 for each class and sub-class member, as well as actual damages and attorneys' fees and costs. See N.J.S.A. § 56:12-17, providing that a seller who violates the TCCWNA: **"shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs."** See also United Consumer Fin. Servs. Co. v. Carbo, 410 N.J. Super. 280, 310 (App. Div. 2009), affirming the trial judge's decision to award the $100 statutory penalty to each class member under N.J.S.A. §56:12-17 of TCCWNA, stating:

> **[T]he $100 civil penalty is not unreasonably disproportionate when viewed in that context, whether it is considered with respect to an individual consumer or the 16,845 consumers whose contracts included the prohibited fee. We note that when assessing the constitutional reasonableness of punitive damage awards, courts are directed to consider and give "substantial deference" to judgments made by the Legislature in fixing civil penalties. Nothing about the facts of this case or the numerosity of this class warrants a more searching evaluation of the reasonableness of awarding the civil penalty selected by the Legislature to each member of this class.** (citation omitted).

## COUNT III

### BREACH OF CONTRACT UNDER THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

165.   Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

166.   There was no written contract between Defendant and its customers, including Plaintiff and the class members.

167.   Rather, by operation of the law New Jersey, there existed an implied contract for the sale of goods between Defendant and each customer who purchased items from Defendant's Van Heusen Company Stores in New Jersey.

168.    By operation of law, there existed an implied duty of good faith and fair dealing in each such implied contract.

169.    By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

170.    Specifically, it was a violation of the duty of good faith and fair dealing for Defendant to falsely misrepresent the reference prices and value of the items offered for sale and the associated monetary savings.

171.    As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT IV

### NEW JERSEY UNIFORM DECLARATORY JUDGMENT ACT
### N.J.S.A. § 2A:16-51, et seq.

172.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

173.    Plaintiff and the class need, and are entitled to, an order for injunctive and declaratory relief:

    a.    declaring that Defendant's uniform policy of placing inflated, fictitious reference prices on the tags of merchandise, which are not based on actual prices charged in New Jersey in the recent past, to be a violation of New Jersey law;

    b.    declaring Defendant's uniform policy of consistently selling such merchandise at a lower price that purports to be a "sale" price, affording the customer an illusory monetary or percentage-off savings, to be a violation of New Jersey law; and

    c.    enjoining Defendant from continuing both of these policies.

174. Plaintiff and the class members have a significant interest in this matter in that each has been or will be subjected to the unlawful policies alleged herein.

175. Defendant is continuing to engage in both of the policies alleged herein.

176. Plaintiff is a repeat customer of Defendant's Van Heusen Company Store and will shop there again, but brings this suit to ensure that the reference prices listed on Defendant's price tags, and sale prices and percentage-off discounts listed on Defendant's in-store signs, are genuine and not fictitious.

177. Based on the foregoing, a justifiable controversy is presented in this case, rendering declaratory judgment and injunctive relief appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered in favor of Plaintiff and the classes against Defendant as follows:

A.    Enter an order certifying the proposed classes, designating Plaintiff as the representative for each class, and designating the undersigned as class counsel;

B.    Declare that Defendant is financially responsible for notifying all class members of its deceptive advertising, sales, and marketing practices alleged herein;

C.    Declare that Defendant must disgorge, for the benefit of the classes, all or part of the ill-gotten profits it received from its deceptive advertising, sales, and marketing practices alleged herein, or order Defendant to make full restitution to Plaintiff and the members of the classes;

D.    Find that Defendant's conduct alleged herein be adjudged and decreed in violation of the New Jersey laws cited above;

E.      Grant economic and compensatory damages on behalf of Plaintiff and all members of the classes, to the maximum extent permitted by applicable law;

F.      Grant the requested injunctive and declaratory relief as described herein;

G.      Grant reasonable attorneys' fees and reimbursement all costs incurred in the prosecution of this action; and

H.      Grant such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.


**DeNITTIS OSEFCHEN PRINCE, P.C.**

By:

Ross H. Schmierer, Esq. (RS 7215)
315 Madison Avenue, 3rd Floor
New York, New York 10017
(T): (646) 979-3642
rschmierer@denittislaw.com

*Attorneys for Plaintiff*

Dated:  June 19, 2019

# Exhibit A





# Exhibit B





# Exhibit C





# Exhibit D





# Exhibit E



VAN HEUSEN   IZOD

Van Heusen #459
Atlantic City NJ
(609) 344-6273

LS BUTTON DOWN COLLAR SET
  638950349292                    *19.99
  NEW PRICE              19.99
NEVERTUCK LS SLIM PT COLL
  638950219779                    *24.00
  NEW PRICE              24.00
IZ SS PT COLLAR YD 638950130463  *27.50
  NEW PRICE              27.50
AIR SS PT COLLAR FRENCH F
  638950701526                    *22.40
  NEW PRICE              22.40

TOTAL                            $93.89
VISA                             $93.89
04/02/2019                     12:25:58
VISA CREDIT    Entry Method:      Chip
CARD #:             XXXXXXXXXXXX2147
PURCHASE         - APPROVED
AUTH CODE 45094D

Mode:                           Issuer
AID:                  A0000000031010
TVR:                      8000008000
IAD:                  06010A03608000
TSI:                          6800
ARC:                            00
TC:                 23C30B2E88B5A08b
MID  289433   TID:  002 RRN  10287406
Total:                   USD$ 93.89


       Are you a Van Heusen
       Rewards member?
    Earn $10 rewards for every $100
      you spend at Van Heusen
     Visit vanheusen.com/rewards
          to join today!


       Tell us how we are doing!
       INSTANTLY receive a COUPON
       visit vanheusen.com/survey
          with this receipt.

       Coupon will display at end of
      survey. Please complete when
      you have access to a printer.


         9945901539501 79883
          TOTAL SAVINGS
            $137.11

ITEMS 4
04/02/2019  12:25:52  0459 01 2929 5395

     THANK YOU FOR SHOPPING VAN HEUSEN
     CONTACT US AT WWW.VANHEUSEN.COM